[No. 43803. En Banc. May 27, 1976.]

EDWARD GLENN HADDENHAM, *Individually and as Administrator*, ET AL, *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

ALFRED KINGHAMMER, ET AL, *Appellants*, v. THE STATE OF WASHINGTON, *Respondent*.

*Richard McKinney* and *Lane, Powell, Moss & Miller,* by *Ralph H. Palumbo,* for appellants.

*Slade Gorton, Attorney General,* and *Earl R. McGimpsey, Assistant,* for respondent.

BRACHTENBACH, J.—Plaintiffs seek damages under the state tort claims act, RCW 4.92.090,[1] for the deaths of their daughters. Their actions have been consolidated for the purpose of this appeal. Both young women were allegedly murdered by James Ruzicka, an escapee from the sexual psychopath program at Western State Hospital. The State's defense is that the crime victims compensation act, RCW 7.68, provides the exclusive remedy for the damages sought by plaintiffs. Both actions were dismissed by the trial court upon the State's motion. We affirm.

The crime victims compensation act was passed on April 23, 1973. Laws of 1973, 1st Ex. Sess., ch. 122. It provided, effective July 1, 1974, a comprehensive compensation plan for victims of crime incorporating the workmen's compen-

---

[1] RCW 4.92.090 provides:

"The state of Washington, whether acting in its governmental or proprietary capacity, shall be liable for damages arising out of its tortious conduct to the same extent as if it were a private person or corporation."

sation benefit schedule. It was the intent of the legislature to provide a method of compensating and assisting those residents of the state who are innocent victims of criminal acts and who suffer bodily injury or death as a consequence thereof. To that end, it is the intention of the legislature to make certain of the benefits and services which are now or hereafter available to injured workmen under Title 51 RCW also available to innocent victims of crime as defined and provided for in this chapter.

RCW 7.68.010.

In January 1974, some 6 months prior to the effective date of the crime victims compensation act, James Ruzicka, an inmate at Western State Hospital, escaped from custody. In February 1974, he allegedly murdered Misses Kinghammer and Haddenham.[2] On May 31, 1974, the plaintiffs filed their claims pursuant to RCW 4.92.100, alleging negligent conduct by the State in administering the sexual psychopath program at Western State Hospital, which negligence allegedly resulted in the deaths of Misses Kinghammer and Haddenham. Suits against the State were commenced in August 1974. In the meantime, the crime victims compensation act had become effective.

In each trial, the State defended on the basis of the exclusive remedy provision of the crime victims compensation act. This provision provides:

In keeping with the intent of the legislature as set forth in RCW 7.68.010, all civil actions and civil causes cf action against the state for injury or death as a consequence of a criminal act, and all jurisdiction of the courts of the state over such causes, are hereby abolished except as in this chapter provided.

RCW 7.68.040. In each case, the trial court retroactively applied the exclusive remedy provision to bar plaintiffs' causes of action.

The plaintiffs have raised three issues on appeal. The first

---

[2]Ruzicka was charged in separate causes in King County Superior Court with the murders of Misses Kinghammer and Haddenham. He was convicted of first-degree murder of Miss Haddenham in August 1975.

is whether the exclusive remedy provision contained in RCW 7.68.040, whereby the court's jurisdiction is removed in all civil actions and civil causes of action against the State for injury or death as a consequence of a criminal act, is to be given prospective or retroactive effect. This issue is present because the alleged negligence occurred prior to the effective date of the act. Nowhere within this legislative enactment is precise language to be found determinative of this issue. In the absence of such legislative direction, reliance must be placed upon the general rules of statutory construction.

Statutes normally will be construed to operate prospectively only, unless a contrary intent appears. *Bodine v. Department of Labor & Indus.*, 29 Wn.2d 879, 190 P.2d 89 (1948); *Anderson v. Seattle*, 78 Wn.2d 201, 471 P.2d 87 (1970). Such an application is urged by plaintiffs. Where, however, a statute is remedial and its remedial purpose is furthered by retroactive application, the presumption favoring prospective application is reversed. *State v. Heath*, 85 Wn.2d 196, 532 P.2d 621 (1975); *Snow's Mobile Homes, Inc. v. Morgan*, 80 Wn.2d 283, 494 P.2d 216 (1972); *Pape v. Department of Labor & Indus.*, 43 Wn.2d 736, 264 P.2d 241 (1953). Remedial statutes, in general, afford a remedy, or better or forward remedies already existing for the enforcement of rights and the redress of injuries. 3 Sutherland, *Statutory Construction* § 60.02 (4th rev. ed. 1974). The intent of the crime victims compensation act is to compensate and assist the residents of Washington who are the innocent victims of criminal acts. RCW 7.68.010. Its purpose is patently remedial. *See Criminal Injuries Compensation Bd. v. Gould*, 273 Md. 486, 511, 331 A.2d 55 (1975). Prior to the enactment of the crime victims compensation act, the innocent victim of a criminal act had little chance of recovery for the physical injuries or disabilities and financial hardships which he or she, or his or her dependents, may innocently suffer as a consequence of the criminal act. The act is an attempt to remedy that situation. The presumption of retroactivity therefore applies.

Our result is buttressed by the fact that although the act was not to be effective until July 1, 1974, the legislature specifically provided that coverage was to be extended under the act to anyone injured as the result of a criminal act on or after January 1, 1972. RCW 7.68.160.

 The second issue raised on appeal is whether the retroactive application of the remedial provisions of the crime victims compensation act unconstitutionally deprives plaintiffs of their right to sue the state. Prior to the legislature's abolition of the doctrine of sovereign immunity, tort claimants had no right to sue the state. *Kelso v. Tacoma*, 63 Wn.2d 913, 390 P.2d 2 (1964); *Kilbourn v. Seattle*, 43 Wn.2d 373, 261 P.2d 407 (1953). The plaintiffs' right to sue the state for the state's tortious conduct is therefore a matter of legislative grace. *See* Const. art. 2, § 26. In enacting the crime victims compensation act, the legislature expressly withdrew its consent to be sued for injury or death as a consequence of a criminal act.

> It is an established principle of jurisprudence in all civilized nations that the sovereign cannot be sued in its own courts, or in any other, without its consent and permission; but it may, if it thinks proper, waive this privilege, and permit itself to be made a defendant in a suit by individuals, or by another State. And as this permission is altogether voluntary on the part of the sovereignty, it follows that it may prescribe the terms and conditions on which it consents to be sued, and the manner in which the suit shall be conducted, and may withdraw its consent whenever it may suppose that justice to the public requires it.

*Beers v. Arkansas*, 61 U.S. (20 How.) 527, 529, 15 L. Ed. 991 (1895); cited with approval in *Bailey v. School Dist. 49*, 108 Wash. 612, 185 P. 810 (1919).

 The abolition by the legislature of an accrued cause of action based on statute does not violate any constitutional rights of plaintiffs because a tort cause of action is not vested until it is reduced to judgment. *Bailey v. School Dist. 49, supra; Hansen v. West Coast Wholesale Drug Co.*, 47 Wn.2d 825, 289 P.2d 718 (1955); *Sparkman & McLean v.*

*Govan Inv. Trust*, 78 Wn.2d 584, 478 P.2d 232 (1970). A vested right, entitled to protection from legislation, must be more than a mere expectation based upon the anticipated continuance of the existing law. *Godfrey v. State*, 84 Wn.2d 959, 530 P.2d 630 (1975). Whatever rights plaintiffs may have had under RCW 4.92.090 do not rise to constitutional stature and were therefore abolished when the express language of RCW 7.68.040 became effective.

The final question raised on appeal is whether the crime victims compensation act constitutes a violation of the equal protection principles of the federal and state constitutions. U.S. Const. amend. 14, § 1; Const. art. 1, § 12. Plaintiffs attack the act as discriminatory in two respects. First, plaintiffs contend that the act discriminates between those persons having tort causes of action against the State arising out of criminal conduct and those having tort causes of action arising out of noncriminal conduct. Second, plaintiffs contend there is discrimination among the class of victims covered by the act due to varying schedule of benefits payable under the act.

■ Plaintiffs' contentions are unpersuasive. The legislature is given a wide scope of discretion in enacting laws which affect some groups of citizens differently from others. The guaranty is not of absolute equality, requiring the law to treat all persons exactly alike. *Tigner v. Texas*, 310 U.S. 141, 84 L. Ed. 1124, 60 S. Ct. 879, 130 A.L.R. 1321 (1940). The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. *McGowan v. Maryland*, 366 U.S. 420, 6 L. Ed. 2d 393, 81 S. Ct. 1101 (1961).

■ It is an established rule of law in this state that an enactment is presumptively valid, and the burden is upon the challenger to prove that the questioned classification does not rest upon a reasonable basis. *State v. Perrigoue*, 81 Wn.2d 640, 503 P.2d 1063 (1972). Merely challenging the wisdom or expediency of the statute is insufficient. *Brewer v. Copeland*, 86 Wn.2d 58, 542 P.2d 445 (1975).

Is there a reasonable basis for putting crime victims,

including those who are victims as a result of the State's negligence, into a category separate from those injured by the State's negligence, but without the intervention of a criminal act? We think so.

█ The crime victims compensation act provides compensation and assistance to the residents of this state who are the innocent victims of criminal acts and who suffer injuries or death as a consequence thereof. Compensation is provided irrespective of questions of negligence and fault. In consideration for this protection, the legislature abolished all claims against the State for injury or death as a consequence of the criminal act. This exclusion is neither arbitrary nor unreasonable.

> In the area of economics and social welfare, a State does not violate the Equal Protection Clause merely because the classifications made by its laws are imperfect. If the classification has some "reasonable basis," it does not offend the Constitution simply because the classification "is not made with mathematical nicety or because in practice it results in some inequality."

*Dandridge v. Williams*, 397 U.S. 471, 485, 25 L. Ed. 2d 491, 90 S. Ct. 1153 (1970). The classification contained within the crime victims compensation act includes all innocent crime victims who are residents of the state. In defining the class of persons to benefit from the act, the legislature has determined that there should be no difference whether an innocent victim is injured by an escapee from a state institution, or by a parolee, or by someone outside the state coming within the state, or by anyone else. The thing that the legislature was focusing on was the victim's plight, and it was trying to establish a fair means of compensating all innocent victims.

This is the same type of concern facing legislatures prior to the enactment of workmen's compensation acts a half-century ago. The concern was not whether an employee could prove negligence in a particular case, but that society was faced with a great number of people who were being injured because of the dangers and hazards in their work,

only a small portion of whom received any substantial compensation under the existing tort system of law. *See* Gellhorn & Lauer, *Administration of the New York Workmen's Compensation Law* (pt. 1), 37 N.Y.U. L. Rev. 3 (1962). In upholding these original compensation acts, the United States Supreme Court stated:

> Nor can it be deemed arbitrary and unreasonable, from the standpoint of the employee's interest, to supplant a system under which he assumed the entire risk of injury in ordinary cases, and in others had a right to recover an amount more or less speculative upon proving facts of negligence that often were difficult to prove, and substitute a system under which in all ordinary cases of accidental injury he is sure of a definite and easily ascertained compensation, not being obliged to assume the entire loss in any case but in all cases assuming any loss beyond the prescribed scale.

*New York Cent. R.R. v. White*, 243 U.S. 188, 204, 61 L. Ed. 667, 37 S. Ct. 247 (1916).

The legislature, in looking at the situation of crime, has made similar determinations. The legislature has determined that the number of innocent victims injured is substantial, that their ability to be compensated under existing law is somewhat sporadic, and that there ought to be a uniform procedure for compensating these innocent victims on a fair basis. The classification created by this legislation is rationally related to that purpose of providing definite and easily ascertained compensation for all innocent crime victims.

Plaintiffs' contention that this classification arbitrarily discriminates against injured persons who but for the crime victims compensation act would have had a cause against the state for negligence is no different from early challenges to the workmen's compensation statutes. The acts were challenged on the basis that they created arbitrary classifications of workmen, some of whom lost common-law rights to sue their employers, others who retained such rights. The courts uniformly rejected such arguments. *New York Cent. R.R. v. White, supra; Middleton v. Texas Power*

& *Light Co.*, 249 U.S. 152, 63 L. Ed. 527, 39 S. Ct. 227 (1919).

In the second prong of their equal protection challenge to the crime victims compensation act plaintiffs allege that the act arbitrarily discriminates against those innocent crime victims who are not workmen. The basis for this argument is found within the schedule of compensation provided in the act. Under the act, the victim is equated with an on-the-job injured employee and the amount of the award is geared to the amount an injured workman or the dependents of a deceased workman would receive under the industrial insurance act, Title 51 RCW. Not all victims will, however, be employed at the time they are injured. It is the amount of compensation available to these persons to which plaintiffs object.

As stated in *Arizona Employers' Liab. Cases*, 250 U.S. 400, 429, 63 L. Ed. 1058, 39 S. Ct. 553, 6 A.L.R. 1537 (1919):

> [I]f a State recognizes or establishes a right of action for compensation to injured workmen upon grounds not arbitrary or fundamentally unjust, the question whether the award shall be measured as compensatory damages are measured at common law, or according to some prescribed scale reasonably adapted to produce a fair result, is for the State itself to determine.

*See also Madin v. Industrial Accident Comm'n*, 46 Cal. 2d 90, 292 P.2d 892 (1956); *Zahrobsky v. Westmoreland Coal Co.*, 344 Pa. 446, 25 A.2d 823 (1942). We find this principle equally applicable to the compensation schedule of the crime victims compensation act. Within the limitation of reasonableness, the legislature is constitutionally empowered to fix the rates of compensation. Reasonableness is not dependent on the effect of the act in an isolated case.

The extent of compensation available under the crime victims compensation act is related to those benefits available to an injured workman under our workmen's compensation law. The amount of compensation available to an innocent crime victim who is not employed at the time of the injury is commensurate with those benefits. These benefits are neither arbitrary nor unreasonable in relation to

the consequences suffered. A nonworking crime victim is not similarly circumstanced to those who are workmen in regard to the combined effect of his or her injuries and past receipt of wages. Plaintiffs are really challenging the wisdom of the legislature in fixing the amounts of compensation. It is not our function to inquire into whether this amount is wise or desirable. *James v. Strange*, 407 U.S. 128, 32 L. Ed. 2d 600, 92 S. Ct. 2027 (1972); *State School Directors Ass'n v. Department of Labor & Indus.*, 82 Wn.2d 367, 510 P.2d 818 (1973).

Plaintiffs' right to recovery is limited to that available under the crime victims compensation act.

Judgment affirmed.

STAFFORD, C.J., and ROSELLINI, HUNTER, HAMILTON, WRIGHT, UTTER, and HOROWITZ, JJ., concur.